OPINION
{¶ 1} Defendant-Appellant, Chad M. Brickner-Latham, appeals the judgment of the Tiffin Municipal Court convicting him of obstruction of official business. On appeal, Brickner-Latham argues that his conviction was not supported by sufficient credible evidence and that the trial court erred in denying his motion for acquittal under Crim.R. 29; that the trial court erred in denying his motion to suppress evidence; and, that the facts presented did not support a reasonable articulable suspicion to warrant an investigatory stop. Finding that Brickner-Latham's walking away from a police officer after being instructed to stop constituted an affirmative act and that there was reasonable articulable suspicion to warrant an investigatory stop of Brickner-Latham, we affirm the judgment of the trial court.
 {¶ 2} In February of 2005, Brickner-Latham was arrested for obstructing official business in violation of R.C.2921.31(A),[1] a misdemeanor of the second degree. In March of 2005, Brickner-Latham pled not guilty to the charge against him. In April of 2005, Brickner-Latham filed a motion to suppress the evidence obtained by the Tiffin Police Department. In May of 2005, a hearing was held on the motion to suppress, where the following testimony was heard:
 {¶ 3} Officer Joe O'Connor of the Tiffin Police Department testified for the State. Officer O'Connor testified that on or about February 26, 2005, at about 2:45 a.m., while on regular patrol, he observed three subjects crossing South Washington Street, in the City of Tiffin, Seneca County, Ohio. Officer O'Connor continued that while he was at a light on South Washington Street with a truck in front of him, he heard someone out of the three subjects yelling very loudly, which he noted was unusual at that time of night. Next, Officer O'Connor testified that as he proceeded south on South Washington Street, the subjects had crossed over into City Lot 7. Officer O'Connor testified that as he passed the lot, someone in the group yelled "police." Officer O'Connor then stated that he backed up and turned into the lot to investigate what was going on and to tell the subjects to at least quiet down and to desist from the disorderly conduct. Officer O'Connor noted that when he entered into the parking lot, two of the subjects were standing near a pick-up truck, while Brickner-Latham kept walking away from him, westbound through the lot.
 {¶ 4} Officer O'Connor testified that he drove across the lot and up beside Brickner-Latham, where he instructed Brickner-Latham multiple times to stop, and Brickner-Latham kept ignoring and walking away from him. Officer O'Connor noted that after Brickner-Latham got close to the back part of the lot near an alley, he got out of his patrol car and again ordered Brickner-Latham to stop. Officer O'Connor further testified that he was requesting Brickner-Latham to stop because he believed that Brickner-Latham was the person yelling and he did not know if Brickner-Latham was trying to avoid him because of a warrant or another issue. Officer O'Connor continued that after Brickner-Latham continued to walk away, he went after him, grabbed him by the back his shirt, and detained him. Officer O'Connor then testified that after he detained Brickner-Latham, he asked Brickner-Latham his name several times, to which Brickner-Latham never responded, so he placed Brickner-Latham under arrest. Officer O'Connor also stated that he had to force Brickner-Latham into his police car, with the help of Officer McDole. Officer O'Connor further testified that he detected a strong odor of an alcoholic beverage on Brickner-Latham, and when they arrived at the police station, Brickner-Latham was completely uncooperative.
 {¶ 5} Officer O'Connor continued that once Brickner-Latham was placed in his holding cell, Brickner-Latham held the toilet valve down for at least five minutes and was drinking out of the drinking fountain part of the toilet. Officer O'Connor continued that after refusing to stop holding down the toilet valve, Brickner-Latham was physically moved to the county jail, because Brickner-Latham refused to walk. Officer O'Connor further stated that once he moved Brickner-Latham to his cell, Brickner-Latham went completely limp and the officers had to carry him into his new cell. Officer O'Connor testified that once Brickner-Latham was in his new cell, he went directly to the toilet and water fountain and ran the water; however, this time the officers were able to turn off the water in the cell. Officer O'Connor proceeded to testify that after the water was turned off, Brickner-Latham began to unroll a roll of toilet paper all over his cell block. Finally, Officer O'Connor testified that as a result of his conduct, Brickner-Latham was charged with disorderly conduct[2] and obstructing official business in violation of R.C. 2921.31(A), a misdemeanor of the second degree.
 {¶ 6} On cross-examination, Officer O'Connor testified that he did not actually see Brickner-Latham yelling, but he could tell that the person yelling was in the group of people containing Brickner-Latham, because there was no one else present in the area. Additionally, Officer O'Connor testified that Brickner-Latham's group was not acting suspiciously, other than the yelling. Officer O'Connor also testified that he had probable cause to approach Brickner-Latham in order to investigate whether he was the one who yelled. Further, Officer O'Connor testified that since Brickner-Latham did not stop, he had probable cause to inquire as to whether there was an outstanding warrant on Brickner-Latham or if Brickner-Latham was just trying to avoid police contact.
 {¶ 7} At the close of the suppression hearing, the trial court denied Brickner-Latham's motion after which he moved to withdraw his demand for a jury trial. A bench trial subsequently occurred in June of 2005.
 {¶ 8} During the bench trial, Officer O'Connor again testified for the State. Officer O'Connor testified that on or about February 26, 2005, at about 2:45 a.m., while on regular patrol, he observed three subjects crossing South Washington Street, in the City of Tiffin, Seneca County, Ohio. Officer O'Connor continued that while he was at a light on South Washington Street with a pickup truck in front of him, he heard someone out of the three subjects yelling very loudly and unnecessarily. Next, Officer O'Connor testified that as he proceeded south on South Washington Street, the subjects were in City Lot 7. Officer O'Connor testified that as he passed the parking lot, someone in the group yelled "police" or something real loud. Officer O'Connor then stated that he backed up and turned into the lot to investigate further. Officer O'Connor noted that when he entered the parking lot, two of the subjects were walking towards or were near a pickup truck, while Brickner-Latham kept walking away from him, westbound through the lot. Officer O'Connor testified that he approached the two subjects in the pickup truck and without being asked they pointed to Brickner-Latham.
 {¶ 9} Officer O'Connor testified that he then drove across the lot and up beside Brickner-Latham, where he instructed Brickner-Latham multiple times to stop and Brickner-Latham continued to walk away from him. Officer O'Connor noted that he ended up getting out of his patrol car and again ordered Brickner-Latham to stop. Officer O'Connor continued that after Brickner-Latham continued to walk away, he went after him, grabbed him by the back of the shirt, and detained him. Officer O'Connor then testified that after he detained Brickner-Latham, he asked Brickner-Latham his name several times, to which Brickner-Latham never responded, so he took Brickner-Latham back to his car, where he asked Brickner-Latham his name again, and after receiving no answer, he placed Brickner-Latham under arrest.
 {¶ 10} Officer O'Connor testified that after placing Brickner-Latham under arrest, he observed an odor of an alcoholic beverage on Brickner-Latham's breath or person. Officer O'Connor testified that he then asked Brickner-Latham whether he had any identification to which Brickner-Latham did not respond. Officer O'Connor continued that he patted Brickner-Latham down and found a wallet on Brickner-Latham's person and found his driver's license or ID card in the wallet. Officer O'Connor also stated that he had to force Brickner-Latham into his police car, with the help of Officer McDole. Officer O'Connor further testified that when they arrived at the police station, Brickner-Latham was completely uncooperative.
 {¶ 11} Officer O'Connor continued that once Brickner-Latham was placed in his holding cell, Brickner-Latham held the toilet value down and began drinking out of the drinking fountain part of the toilet. Officer O'Connor continued that after refusing to stop holding down the toilet value, Brickner-Latham was physically moved to the Seneca County Jail, because Brickner-Latham refused to walk. Officer O'Connor further stated that once he moved Brickner-Latham to his new cell, Brickner-Latham went completely limp and the officers had to carry him into his cell. Officer O'Connor testified that once Brickner-Latham was in his new cell, he went directly to the toilet and water fountain and ran the water; however, this time the officers were able to turn off the water in the cell. Officer O'Connor proceeded to testify that after the water was turned off, Brickner-Latham began to unroll a roll of toilet paper all over his cell block. Finally, Officer O'Connor testified that as a result of his conduct, Brickner-Latham was charged with disorderly conduct and obstructing official business in violation of R.C. 2921.31(A), a misdemeanor of the second degree.
 {¶ 12} On cross-examination, Officer O'Connor testified that he did not actually see Brickner-Latham yelling, but he could tell that the person yelling was in the group of people containing Brickner-Latham, because no one else was present. Additionally, Officer O'Connor testified that Brickner-Latham's group was not acting suspiciously, other than the yelling. Officer O'Connor also testified that since Brickner-Latham did not stop, he had probable cause to inquire as to whether there was an outstanding warrant on Brickner-Latham or if Brickner-Latham was just trying to avoid police contact.
 {¶ 13} After the State had presented its case-in-chief, Brickner-Latham moved under Crim.R. 29 for acquittal on both counts. The trial court granted Brickner-Latham's Crim.R. 29 motion on the disorderly conduct count, but denied his motion on the obstructing official business count. At the conclusion of the bench trial, Brickner-Latham was convicted of obstructing official business in violation of R.C. 2921.31(A), a misdemeanor of the second degree. Additionally, Brickner-Latham was fined fifty dollars, ordered to serve thirty days in the Seneca County Jail, with twenty-four of those days suspended and credited for six days served, placed on non-reporting probation for a period of one-year, and ordered to report to Fireland's for a drug and alcohol evaluation.
 {¶ 14} It is from this judgment that Brickner-Latham appeals, presenting the following assignments of error for our review.
 Assignment of Error No. I Defendant's conviction was not supported by sufficientcredible evidence. The trial court erred in denying Defendant'sMotion for acquittal pursuant to Rule 29 of the Ohio Rules ofCriminal Procedure.
 Assignment of Error No. II The trial court erred in denying the defendant's motion tosuppress evidence.
 Assignment of Error No. III The facts as presented did not support a sufficientarticulable suspicion under Terry v. Ohio to warrant aninvestigatory stop.
 {¶ 15} Due to the nature of Brickner-Latham's claims, we will be addressing the assignments of error out of order.
 Assignments of Error No. II III {¶ 16} In his second assignment of error, Brickner-Latham argues that the trial court erred in denying his motion to suppress the evidence obtained by the Tiffin Police Department. In his third assignment of error, Brickner-Latham argues that the trial court erred because the facts presented to it do not support a sufficient articulable suspicion to warrant an investigatory stop under Terry v. Ohio (1968), 392 U.S. 1. Specifically, Brickner-Latham asserts that Officer O'Connor did not have the grounds to stop and detain him under Terry.
Because these two assignments of error are interrelated, we will address them together.
 {¶ 17} Appellate review of a decision on a motion to suppress evidence presents mixed questions of law and fact. United Statesv. Martinez (11th Cir. 1992), 949 F.2d 1117, 1119. At a suppression hearing, the trial court assumes the role of trier of fact, and as such, is in the best position to resolve questions of fact and evaluate witness credibility. State v. Carter
(1995), 72 Ohio St.3d 545, 552. As such, a reviewing court must accept a trial court's factual findings if they are supported by competent, credible evidence. State v. Guysinger (1993),86 Ohio App.3d 592, 594. "Accepting those facts as true, [the reviewing court] must independently determine as a matter of law, without deference to the trial court's conclusion, whether they meet the applicable legal standard." Village of McComb v.Andrews, 3rd Dist. No. 5-99-41, 2000-Ohio-1663, citing Ornelasv. United States (1996), 517 U.S. 690; State v. Anderson
(1995), 100 Ohio App.3d 688, 691. An appellate court reviews the trial court's application of the law de novo. Anderson,100 Ohio App.3d at 691.
 {¶ 18} Whenever a police officer accosts an individual and restricts his freedom of movement, that individual's Fourth Amendment rights are implicated. Terry, 392 U.S. 1 at 16. In order for a police officer to temporarily detain someone for investigative purposes, absent the presence of probable cause, the police officer must have a reasonable articulable suspicion that illegal activity is afoot. State v. Bobo (1988),37 Ohio St.3d 177, 179, citing Terry, 392 U.S. at 21. Reasonable articulable suspicion necessary to effectuate an investigative stop has been defined as, "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion * * *." Terry,392 U.S. at 21.
 {¶ 19} Based upon the testimony at the suppression hearing, we find that Brickner-Latham's conduct gives rise to enough of a reasonable articulable suspicion that illegal activity is afoot to permit Officer O'Connor to conduct an investigative stop of Brickner-Latham. Accordingly, Brickner-Latham's third assignment of error is overruled.
 {¶ 20} Additionally, since we find that the facts presented do give rise to a sufficient articulable suspicion under Terry
to warrant an investigatory stop, we find that the trial court properly denied Brickner-Latham's motion to suppress evidence. Accordingly, Brickner-Latham's second assignment of error is overruled.
 Assignment of Error No. I {¶ 21} In his first assignment of error, Brickner-Latham argues that his conviction was not supported by sufficient credible evidence and that the trial court erred in denying his motion for acquittal, filed under Crim.R. 29. Specifically, Brickner-Latham contends he cannot be guilty of obstructing official business by doing nothing. We disagree.
 {¶ 22} For purposes of brevity, we will address Brickner-Latham's claim that the evidence was insufficient to support the finding that he was guilty beyond a reasonable doubt and his claim that the trial court erred in denying his motion for acquittal together. First, an appellate court's function when reviewing the sufficiency of the evidence is to determine whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus, superseded by state constitutional amendment on other grounds in State v. Smith (1997), 80 Ohio St.3d 89.
 {¶ 23} Next, Crim.R. 29(A) provides:
Motion for judgment of acquittal. The court on motion of adefendant or on its own motion, after the evidence on either sideis closed, shall order the entry of a judgment of acquittal ofone or more offenses charged in the indictment, information, orcomplaint, if the evidence is insufficient to sustain aconviction of such offense or offenses. The court may not reserveruling on a motion for judgment of acquittal made at the close ofthe state's case.
 {¶ 24} Under Crim. R. 29(A), a court shall not order an entry of judgment of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proven beyond a reasonable doubt.State v. Bridgeman (1978), 55 Ohio St.2d 261. When an appellate court reviews a record for sufficiency, the relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.State v. Jenks (1981), 61 Ohio St.3d 259. A motion for acquittal tests the sufficiency of the evidence. State v. Miley
(1996), 114 Ohio App.3d 738, 742. Sufficiency is a test of adequacy, State v. Thompkins (1997), 78 Ohio St.3d 380, 386, and the question of whether evidence is sufficient to sustain a verdict is one of law. State v. Robinson (1955),162 Ohio St. 486.
 {¶ 25} The Ohio Revised Code defines obstructing official business in R.C. 2921.31. R.C. 2921.31 states in relevant part:
(A) No person, without privilege to do so and with purpose toprevent, obstruct, or delay the performance by a public officialof any authorized act within the public official's officialcapacity, shall do any act that hampers or impedes a publicofficial in the performance of the public official's lawfulduties.
R.C. 2921.31 has five essential elements: (1) an act by the defendant; (2) done with the purpose to prevent, obstruct, or delay a public official; (3) that actually hampers or impedes a public official; (4) while the official is acting in the performance of a lawful duty; and (5) the defendant does so act without a privilege to do so. R.C. 2921.31(A); State v. Dice,
3d Dist. No. 9-04-41, 2005-Ohio-2505 at ¶ 19.
 {¶ 26} In the case sub judice, Brickner-Latham argues that his refusal to state his identity is does not constitute "an act", as required under R.C. 2921.31(A). We agree with Brickner-Latham that Ohio courts have held that one cannot be guilty of obstructing official business by doing nothing because the text of R.C. 2921.31 specifically requires an offender to act. State v. Justice (Nov. 16, 1999), 4th Dist. No. 99CA631, citing State v. McCrone (1989), 63 Ohio App.3d 831, City ofHamilton v. Hamm (1986), 33 Ohio App.3d 175, and Columbus v.Michel (1978), 55 Ohio App.2d 46. And, the refusal to produce identification upon request by a police officer will not support a finding of obstructing official business. McCrone,63 Ohio App.3d at 835.
 {¶ 27} Nevertheless, while Ohio courts have concluded that the mere refusal to answer questions does not constitute an "act," it has been further held that where an individual "also takes affirmative actions to hamper or impede the police from finding out his or her identity, the defendant may be guilty of obstructing official business." Justice, supra. Further, this Court has held that running from the police "did hinder the officers' performance of their lawful duty * * *." Dice, 3rd Dist. No. 9-04-41, 2005-Ohio-2505, at ¶ 23, and, other Ohio courts have agreed. See State v. Davis (2000),140 Ohio App.3d 751, 753 ("[T]he evidence shows that Davis became aware that the officers were trying to detain him and continued to walk away from them. His refusal to stop gave the officers probable cause to believe that he was impeding the performance of their duty in violation of R.C. 2921.31."); State v. Harris, 10th Dist. No. 05AP-27, 2005-Ohio-4553, at ¶ 16 ("[W]e hold that fleeing from a police officer who is lawfully attempting to detain the suspect under the authority of Terry, is an affirmative act that hinders or impedes the officer in the performance of the officer's duties as a public official and is a violation of R.C.2921.31, obstructing official business."); State v. Lohaus, 1st Dist. No. C-020444, 2003-Ohio-777, at ¶ 12 ("[W]e hold that Lohaus's actions in fleeing across several lawns after being told to stop — and in forcing the investigating officer to physically restrain him — fell squarely within [R.C. 2921.31's] proscriptions.").
 {¶ 28} Therefore, we find that Brickner-Latham's walking away from Officer O'Connor was an affirmative act that hindered or impeded Officer O'Connor in the performance of his official duties. Further, Brickner-Latham's persistence in disregarding Officer O'Connor's requests to stop was sufficient evidence for a rational trier of fact to conclude that Brickner-Latham acted with the specific intent to prevent, obstruct, or delay Officer O'Connor's lawful duties. Moreover, it has not been alleged, so we will presume that Brickner-Latham did not have the privilege to ignore Officer O'Connor. Thus, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of R.C. 2921.31
proven beyond a reasonable doubt. Accordingly, Brickner-Latham's first assignment of error is overruled.
 {¶ 29} Having found no error prejudicial to appellant herein, in the particulars assigned and argued, we affirm the judgment of the trial court.
Judgment Affirmed.
 Cupp and Shaw, JJ., concur.
[1] The complaint states that Brickner-Latham violated R.C.2921.31(A) (1); however, R.C. 2921.31(A) (1) does not exist. Even though the complaint states the incorrect numerical section of the Ohio Revised Code, the complaint satisfied the requirements of Crim.R. 7(B). Thus, the reference to R.C. 2921.31(A) (1) was manifestly a typographic mistake and could not have misled Brickner-Latham as to the nature of the charge he had to defend against. See State v. Spriggs (Dec. 18, 1998), 2d Dist. No. 98-CA-19 (noting that the reference to the wrong degree of felony was a mere typographical mistake when the language used in the complaint and statute number made clear to the defendant the charge to which she was charged).
[2] The disorderly conduct charge is not before us on appeal.