Judgment reversed<br>and cause remanded.

BROGAN and FAIN, JJ., concur.

---

## CITY OF CLEVELAND HEIGHTS, Appellee,

### v.

## LEWIS, Appellant.

[Cite as *Cleveland Hts. v. Lewis*, 187 Ohio App.3d 786, 2010-Ohio-2208.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 92917.

Decided May 19, 2010.

Kim T. Segebarth, City of Cleveland Heights Prosecuting Attorney, for appellee.

Kenneth D. Myers, for appellant.

PATRICIA ANN BLACKMON, Judge.

{¶ 1} Pursuant to Loc.App.R. 25.1, this court convened an en banc conference in accordance with *McFadden v. Cleveland State Univ.*, 120 Ohio St.3d 54, 2008-Ohio-4914, 896 N.E.2d 672.

{¶ 2} Appellant, Warren Lewis, appeals his conviction for misdemeanor obstructing official business and assigns the following error for our review:

"I.   The trial court erred by overruling appellant's Rule 29 motions and by finding appellant guilty of obstruction [sic] of official business."

{¶ 3} Having reviewed the record and pertinent law, we reverse the trial court's decision and vacate Lewis's conviction. The apposite facts follow.

## Procedural Facts

{¶ 4} The trial judge found Lewis guilty of obstructing official business and sentenced him to three days in jail and six months' inactive probation and ordered him to pay a $100 fine and court costs. The trial judge suspended the three-day jail sentence.

{¶ 5} The next day, Lewis moved the trial judge to stay execution of his sentence pending his appeal. The trial judge denied his motion to stay execution of the sentence.

{¶ 6} Lewis timely filed his appeal, and on March 4, 2009, he paid his fine and court costs. While his appeal was pending, he served his inactive probation, which ended in August 2009.

{¶ 7} In his appeal, Lewis failed to address whether his appeal was rendered moot because he had completed all aspects of his sentence and failed to allege any collateral disability. We do not gather from the record any inference of a collateral disability.

{¶ 8} During oral argument, this court raised the mootness issue with both parties. Lewis's attorney argued that the appeal was sustainable because Lewis asked the trial court for a stay of execution of his sentence before he paid the fine and court costs, but the trial court refused.

## Mootness

{¶ 9} The initial issue before us is whether Lewis involuntarily served or satisfied all aspects of his sentence.

{¶ 10} In our most recent opinion on this issue, we held the following:

"[U]nless one convicted of a misdemeanor seeks to stay the sentence imposed pending appeal or otherwise involuntarily serves or satisfies it, the case will be dismissed as moot unless the defendant can demonstrate a particular civil disability or loss of civil rights specific to him arising from the conviction."

(Boldface omitted.) *Oakwood v. Pfanner*, Cuyahoga App. No. 90664, 2009-Ohio-464, 2009 WL 270500 ¶ 4, quoting *Cleveland v. Martin*, Cuyahoga App. No. 79896, 2002-Ohio-1652, ¶ 14, 2002 WL 568302, *3. See also *Cleveland v. Pavlick*, Cuyahoga App. No. 91232, 2008-Ohio-6164, 2008 WL 5050133.

{¶ 11} The facts show that Lewis failed to show a collateral disability, and we cannot infer the existence of one from this record. Consequently, in order for Lewis to avoid dismissal of his appeal, he has to show that his sentence was stayed or involuntarily satisfied. The record establishes that the trial court

refused to stay execution of his sentence; consequently, Lewis's appeal can survive mootness and dismissal only if he involuntarily served or satisfied all aspects of his sentence. We conclude that his sentence was involuntarily served or satisfied.

{¶ 12} Several decisions from this court have spoken to the meaning of the phrase "unless otherwise involuntarily serves" and have held that a defendant does not voluntarily complete his sentence when he has moved for a stay of execution of the sentence and the stay has been denied by the trial court. *Cleveland v. Burge*, Cuyahoga App. No. 83713, 2004-Ohio-5210, 2004 WL 2340079; *Cleveland v. Townsend*, Cuyahoga App. No. 87006, 2006-Ohio-6265, 2006 WL 3446220; and *Broadview Hts. v. Krueger*, Cuyahoga App. No. 88998, 2007-Ohio-5337, 2007 WL 2875156.

{¶ 13} We have suggested that the very existence of an unsuccessful motion for stay results in the sustainability of the appeal. One court made the following observation: "In such a situation, the completion of the sentence would be involuntary, and the defendant would retain his or her right to appeal the underlying conviction and sentence." *State v. Blivens* (Sept. 30, 1999), 11th Dist. No. 98–L–189, 1999 WL 960955, *2, citing *State v. Harris* (1996), 109 Ohio App.3d 873, 875, 673 N.E.2d 237. The situation in that case was an unsuccessful stay of execution in the trial court.

{¶ 14} At least one court has held that a defendant convicted of a misdemeanor must seek a stay of execution of the sentence in the appellate court to avoid dismissal of the appeal as moot. *Dayton v. Huber*, 2d Dist. No. 20425, 2004-Ohio-7249, 2004 WL 3561217.

{¶ 15} We decline to follow this ruling because the reasoning does not avoid the situation in which the defendant has no option but to pay the fine in order to avoid contempt of court or jail. For example, in *Broadview Hts. v. Krueger*, Cuyahoga App. No. 88998, 2007-Ohio-5337, 2007 WL 2875156, the trial court asked defendant, after he had denied her stay of execution of the sentence, whether she was prepared to pay the fine on that day. She paid the fine. The situation in *Krueger* placed the defendant in an automatic involuntary position.

{¶ 16} It could be argued, however, that *Krueger* should be narrowly read. But prior to *Krueger*, this court used the denial of a stay of execution as the bench mark for determining mootness. *Townsend*, Cuyahoga App. No. 87006, 2006-Ohio-6265, 2006 WL 3446220; *Burge*, Cuyahoga App. No. 83713, 2004-Ohio-5210, 2004 WL 2340079. In *Townsend* and *Burge*, we held that a defendant does not voluntarily complete the sentence when he has unsuccessfully moved for a stay of execution of his sentence. We believe that those cases are correct in light of *State v. Wilson* (1975), 41 Ohio St.2d 236, 70 O.O.2d 431, 325 N.E.2d 236.

{¶ 17} In *Wilson*, the defendant pleaded no contest after his motion to suppress a concealed weapon was denied. The trial court found him guilty, and he promptly paid the fine and costs. In *Wilson*, there was no doubt that the defendant intended to complete his sentence.

{¶ 18} This is not the case here. We can infer that Lewis did not intend to complete all aspects of his sentence, because he requested a stay of execution of his sentence; thus payment of the fine and costs, and completion of the inactive probation were involuntary. Accordingly, we will address the merits of his appeal.

## Facts

{¶ 19} At trial, Officer Clayburn testified that on June 21, 2008, he was dispatched to Bainbridge Road on a call regarding a juvenile fight involving three girls. Clayburn testified that when he arrived on the scene, he spoke with the girls involved, including Lewis's daughter, who had an injury to her eye. Clayburn also spoke with several parents, including Lewis's wife.

{¶ 20} Clayburn testified that because he received conflicting versions from each party and could not tell who was the aggressor, he decided to charge all three girls. Clayburn advised the parents that all three girls would be charged, and he began gathering information from the respective parents about their child.

{¶ 21} Clayburn testified that as he was gathering the information, Lewis arrived and began talking with the other parents in a hostile manner. Clayburn testified that he asked Lewis to leave the scene, but he initially refused. Eventually, Lewis relented and walked back to his house.

{¶ 22} Clayburn testified that after he had gathered the information from the other parents, he went to Lewis's house to get information on Lewis's daughter. Clayburn testified that Lewis, who was standing on the porch, refused to give him any information, and he walked back into his house.

{¶ 23} Clayburn testified that he then approached Lewis's wife to obtain the information. Clayburn testified that Lewis's wife, a United States Postal Service worker, was seated in her postal vehicle when he approached. Clayburn stated that while he was talking with Lewis's wife, Lewis told his wife not to give him any information. Clayburn stated that Lewis's wife then indicated that she could not give him any information and then drove away.

{¶ 24} Clayburn testified that he again approached Lewis and told him that he needed the information. Clayburn testified about the ensuing events as follows:

Q. What happened next?

A. He was still upset. I then approached him and told him I needed the address and needed the information on his daughter. And if he didn't give

me the information on the address, I would look for the address. I couldn't locate the address on the residence. And I told him I need the address. And he told me to find it myself.

Q. You mean the house itself had no number?

A. Right.

Q. It was on Bainbridge, but it had no number?

A. No.

Q. So you asked him for the daughter's information and he did not provide any information on the daughter?

A. Right.

Q. You asked him the address of the house and he said find it yourself?

A. Yes, more or less, figure it out yourself. That's what it was.

Q. What happened next?

A. At that point in time I advised him, I said, you are going to be arrested if you don't give me the information, because I need that information to complete the investigation and the charge. And he said you do what you have to do, arrest me. And I went over and I arrested him and placed him in handcuffs. He cooperated, placing his hands behind his back.

{¶ 25} Clayburn charged Lewis with obstructing official business and resisting arrest.

{¶ 26} Lewis testified that he is employed by the United States Postal Service as a letter carrier. Lewis testified that when he arrived on the scene, he learned from his wife that two girls, who had attacked their daughter two days earlier, had attacked her again. Lewis also learned that Clayburn intended to charge all three girls with disorderly conduct. Lewis testified that as he was about to talk with the other parents, Clayburn told him he had to leave because he did not want a riot. Lewis testified that he initially refused, but walked back to his house.

{¶ 27} Lewis testified that when Clayburn came to his house to inquire about the address, he told him he did not have anything to say. Lewis denied that he told his wife not to speak to Clayburn. Lewis testified that after he refused to give Clayburn the house number, Clayburn spoke with, his wife who was parked across the street.

{¶ 28} Lewis testified that at the time that Clayburn approached his wife, she was leaving to go back to work. Lewis testified that because Clayburn was leaning into the vehicle, he told his wife that Clayburn could not detain her, because she was in a federal vehicle.

{¶ 29} Lewis's wife, Noelle Eberhart Lewis, testified that she is also a letter carrier. Mrs. Lewis testified that two days prior to the incident, the same two girls had attacked her daughter at Cleveland Heights High School. Mrs. Lewis testified that she had filed an incident report with the Cleveland Heights Police Department.

{¶ 30} Mrs. Lewis testified that when Clayburn approached her postal vehicle, she was about to return to work and Clayburn positioned himself in a manner that prevented her from leaving. Mrs. Lewis testified that she attempted to show Clayburn a copy of the police report, but he was not receptive and would not take the report. Mrs. Lewis testified that it was at that point that her husband, who was standing on the porch, said, "[D]on't you have to go back to work? You need to go back to work."

## Motion for Acquittal

{¶ 31} In the sole assigned error, Lewis argues that the trial court erred in overruling his motion for acquittal. We agree.

{¶ 32} Crim.R. 29(A), which governs motions for acquittal, states:

The court on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment, information, or complaint, if the evidence is insufficient to sustain a conviction of such offense or offenses.

{¶ 33} The sufficiency of the evidence standard of review is set forth in *State v. Bridgeman* (1978), 55 Ohio St.2d 261, 9 O.O.3d 401, 381 N.E.2d 184, syllabus:

Pursuant to Criminal Rule 29(A), a court shall not order an entry of judgment of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt.

See also *State v. Apanovitch* (1987), 33 Ohio St.3d 19, 23, 514 N.E.2d 394; *State v. Davis* (1988), 49 Ohio App.3d 109, 113, 550 N.E.2d 966.

{¶ 34} *Bridgeman* must be interpreted in light of the sufficiency test outlined in *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus, in which the Ohio Supreme Court held:

An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the

crime proven beyond a reasonable doubt. (*Jackson v. Virginia* (1979), 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560, followed.)

{¶ 35} In the instant case, the trial court found Lewis guilty of obstructing official business in violation of R.C. 2921.31(A), which provides:

No person, without privilege to do so and with purpose to prevent, obstruct, or delay the performance by a public official of any authorized act within the public official's official capacity, shall do any act that hampers or impedes a public official in the performance of the public official's lawful duties.

{¶ 36} After reviewing the record, we find that the evidence is insufficient to support a conviction for obstructing official business. The complaint stated and Clayburn testified that the sole reason that he arrested and charged Lewis with obstructing official business was for the refusal to give information on his daughter. Clayburn testified as follows:

Q. And you arrested him because he refused to give you his address?

A. He wouldn't give me any information at all.

Q. That's [the] act of obstruction that you arrested him for?

A. Yes.

\* \* \*

Q. That the act of obstructing official business and impeding you was the refusal to give information on his daughter who was being charged?

A. Correct.

{¶ 37} Courts have generally required an affirmative act for the offense of obstructing official business. *Cleveland v. Weems*, Cuyahoga App. No. 82752, 2004-Ohio-476, 2004 WL 226107, citing *N. Ridgeville v. Reichbaum* (1996), 112 Ohio App.3d 79, 84, 677 N.E.2d 1245; *Hamilton v. Hamm* (1986), 33 Ohio App.3d 175, 176, 514 N.E.2d 942. Mere failure to obey a law-enforcement officer's request does not bring a defendant within the ambit of this offense. Id., citing *Garfield Hts. v. Simpson* (1992), 82 Ohio App.3d 286, 611 N.E.2d 892. Similarly, refusal to provide information to police does not render one guilty of that offense. *Parma v. Campbell* (Nov. 1, 2001), Cuyahoga App. Nos. 79041 and 79042, 2001 WL 1352657, citing *State v. McCrone* (1989), 63 Ohio App.3d 831, 580 N.E.2d 468.

{¶ 38} Clayburn admitted that he was not impeded by Lewis's refusal to provide the requested information. Clayburn testified as follows:

Q. So, Mr. Lewis's refusal to give you any information on his daughter, including his address, didn't really impede you or obstruct you, because you were able to get the same information from the computer, correct?

A. Correct.

Q. And in fact, his refusal to give you his address didn't impede or obstruct you, because there's numerous other ways for you to have gotten that address, correct?

A. Correct.

{¶ 39} We conclude that Lewis's conviction for obstructing official business is not supported by the record. When viewed in the light most favorable to the prosecution, the evidence could not convince a reasonable trier of fact beyond a reasonable doubt that Lewis unlawfully hampered and impeded Clayburn in the performance of his official duties. Accordingly, we sustain Lewis's sole assigned error.

Judgment reversed
and conviction vacated.

BOYLE, CELEBREZZE, DYKE, GALLAGHER, JONES, KILBANE, ROCCO, STEWART, and SWEENEY, JJ., concur.

McMONAGLE, J., concurs separately.

COONEY, J., dissents with opinion.

CHRISTINE T. McMONAGLE, Judge, concurring.

{¶ 40} I concur in the majority opinion in this case, but write separately to emphasize my belief that any criminal conviction, whether felony or misdemeanor, results in a "collateral disability." See my dissent in *State v. McGrath*, 8th Dist. No. 85046, 2005-Ohio-4420, 2005 WL 2046419. I would hold it appropriate to review *any* timely filed appeal from a criminal conviction without necessity of alleging or proving a "collateral disability" resulting from the conviction.

{¶ 41} For instance, in the recent case of *State v. Robinson*, 1st Dist. Nos. C–081084 and C–081141, 2010-Ohio-543, 2010 WL 571943, ¶ 23, the appellate court held that "conviction for a *minor-misdemeanor* violation of R.C. 2925.11 [marijuana possession] creates a disability prohibiting the possession of a firearm or dangerous ordnance, even though the conviction may not constitute a 'criminal record' for background checks involved in licensing." (Emphasis added.) Penalties escalate for subsequent OVI-offense convictions, see R.C. 4511.99, to say nothing of insurance rates. Misdemeanor-assault convictions are not expungeable. R.C. 2953.31. Any misdemeanor conviction prevents a subsequent request for expungement, whether felony or misdemeanor. *Chillicothe v. Herron* (1982), 3 Ohio App.3d 468, 3 OBR 549, 445 N.E.2d 1171.[1] Under the Adam Walsh Act,

---

1. "In order for one to be a 'first offender' as such term is defined in R.C. 2953.31, and entitled to expungement under R.C. 2953.32, the applicant must be a person with no other criminal convictions, including traffic offenses." Id. at syllabus.

many misdemeanor sex offenses result in labeling and reporting requirements. R.C. 2929.23. All applicants for the Ohio Bar examination must report any misdemeanor convictions; indeed, a misdemeanor conviction could form the basis of a suspension from the practice of law. *Disciplinary Counsel v. Gross* (1984), 11 Ohio St.3d 48, 11 OBR 195, 463 N.E.2d 382. In short, there is a palpable collateral disability to any misdemeanor conviction.

{¶ 42} In 1975, when the Ohio Supreme Court decided *State v. Wilson* (1975), 41 Ohio St.2d 236, 70 O.O.2d 431, 325 N.E.2d 236, the court recognized numerous instances where convictions resulted in disabilities: under state law, as a result of a conviction, a defendant could not engage in certain businesses, serve as an official of a labor union, vote in elections, or serve as a juror.[2] Even in cases in which a disability *might* occur, courts have decided that cases should not be rendered moot on appeal.[3]

{¶ 43} Nonetheless, the law that has evolved essentially states that felons may obtain the ear of the appellate court even if they complete their sentence before appellate review; misdemeanants may not unless they specifically show a "collateral disability" resulting from their conviction, or jump through the "request for stay" hoops (either one or two, depending upon whether one "sides with" the majority or the dissent in this matter). I think it is time for the courts to review this issue. Many, if not all of the disabilities mentioned above, e.g., the effect of a minor misdemeanor conviction upon the right to possess firearms, the prohibition against expungement of certain offenses, etc., came into law well beyond the time for appeal of the conviction had run.

{¶ 44} Again, while I believe that *any* criminal conviction creates collateral disabilities and hence upon timely request should be reviewed by appellate courts, we are asked to address here only whether one or two requests for stay are necessary in order to preserve appellate review for misdemeanants.

{¶ 45} The issue has been framed as one of the "voluntariness" of the defendant's serving his sentence.[4] Both the majority and the dissent would hold

---

**2.** *United States v. Morgan* (1954), 346 U.S. 502, 74 S.Ct. 247, 98 L.Ed. 248; *Byrnes v. United States* (C.A.9, 1969), 408 F.2d 599; *Carafas v. LaVallee* (1968), 391 U.S. 234, 88 S.Ct. 1556, 20 L.Ed.2d 554.

**3.** *Cordle v. Woody* (D.C.Va.1972), 350 F.Supp. 479 (prisoner was eligible for parole on another sentence and a misdemeanor conviction might have an adverse effect on granting parole); *Street v. New York* (1969), 394 U.S. 576, 89 S.Ct. 1354, 22 L.Ed.2d 572 (defendant's employer instituted proceedings that might result in suspending the defendant from work without pay if the conviction stood); *Fiswick v. United States* (1946), 329 U.S. 211, 67 S.Ct. 224, 91 L.Ed. 196 (conviction of an alien could weaken a defense to deportation proceedings).

**4.** {¶ a} I note with some amusement that Black's Law Dictionary (5th Ed.1979) 1413 defines "voluntary" as follows: "Unconstrained by interference; unimpelled by another's influence;

that a defendant who completes his sentence and does not request a stay in either the trial or the appellate court, absent a showing upon the record that the defendant was *forced* to serve his sentence before he could reasonably file a request for stay,[5] has rendered his appeal moot. The majority would simply hold that a request for stay made (and denied) in the trial court before the sentence is served is sufficient evidence that the sentence was involuntarily served. The dissent would hold that unless the request for stay was repeated to the appellate court before the sentence was served, it would be presumed the sentence was served voluntarily. I concur with the majority that "once is enough." Actually, as articulated herein, I believe that "once is more than enough."

{¶ 46} While it is true, of course, that stays of misdemeanor sentences are rarely granted by trial courts,[6] I believe that a request for stay is sufficient indicia that any sentence subsequently served is being served involuntarily. Accordingly, I would review the merits of this matter.

BLACKMON, BOYLE, GALLAGHER, KILBANE, ROCCO, and STEWART, JJ., concur in the foregoing opinion.

COLLEEN CONWAY COONEY, Judge, dissenting.

{¶ 47} I respectfully dissent. I would dismiss the within appeal as moot because Lewis has completed his sentence, including six months' probation.

{¶ 48} App.R. 8 provides:

(A) **Discretionary right of court to release pending appeal.** The discretionary right of the trial court or the court of appeals to admit a defendant in a criminal action to bail and to suspend the execution of his sentence during the pendency of his appeal is as prescribed by law.

(B) **Release on bail and suspension of execution of sentence pending appeal from a judgment of conviction.** Application for release on bail and for suspension of execution of sentence after a judgment of conviction shall be

---

spontaneous, acting of one's self * * * proceeding from the free and unrestrained will of the person."

{¶ b} What jail sentence and/or monetary fine could accordingly, ever be termed "voluntarily served?"

{¶ c} In short, people pay fines and serve sentences because they believe something much worse will happen if they do not. This is duress and coercion (albeit legal), not a voluntary act.

5. Presumably a three-day sentence issued on a Friday afternoon that culminated in "Officer, take him away."

6. If only for the difficulty in a trial court's tracking a case in order to ascertain whether an appeal was actually filed and actually prosecuted to conclusion.

made in the first instance in the trial court. Thereafter, if such application is denied, a motion for bail and suspension of execution of sentence pending review may be made to the court of appeals or to two judges thereof. The motion shall be determined promptly upon such papers, affidavits, and portions of the record as the parties shall present and after reasonable notice to the appellee.

{¶ 49} The majority correctly notes that Lewis was denied a stay by the trial court. However, our record shows he failed to request a stay from our court during the six months he was on probation. Therefore, I would find that Lewis voluntarily completed his sentence and his appeal is moot.

{¶ 50} Two districts have followed this principle. The majority has cited the well-reasoned opinion in *Dayton v. Huber,* 2d Dist. No. 20425, 2004-Ohio-7249, 2004 WL 3561217. However, the Seventh District has also held that an appellant must seek a stay at the court of appeals to preserve his issues on appeal. See *Carroll Cty. Bur. of Support v. Brill,* 7th Dist. No. 05CA818, 2005-Ohio-6788, 2005 WL 3489763, ¶ 20, 30, 33.

{¶ 51} Two of the cases from this court on which the majority relies are easily distinguishable. A stay was denied by both the trial court and the court of appeals in *Cleveland v. Townsend,* Cuyahoga App. No. 87006, 2006-Ohio-6265, 2006 WL 3446220. And *Cleveland v. Burge,* Cuyahoga App. No. 83713, 2004-Ohio-5210, 2004 WL 2340079, involved a conviction for assault that by its very nature carried obvious collateral consequences.

{¶ 52} While I agree with this court's analysis in *Broadview Hts. v. Krueger,* Cuyahoga App. No. 88998, 2007-Ohio-5337, 2007 WL 2875156, a defendant who is given a fine and costs and asked "Can you pay today?" does not have much choice but to pay that day, at the trial court's urging.[7] Under that circumstance, clearly a defendant has not "voluntarily" paid or served his or her sentence. But when the defendant has time and opportunity to comply with App.R. 8 and seek a stay pending appeal, after filing a notice of appeal and before the sentence is completed, he must do so in order to demonstrate he did not voluntarily serve his sentence. That is the scenario presented in the instant case.

---

7. The trial court in *Krueger* denied the defendant's request for a stay pending appeal, stating, "What's to appeal? You just pled no contest." Krueger paid her fine to the Parma Municipal Court that day. Id. at ¶ 4.