[Cite as *Parma v. Jackson*, 2024-Ohio-575.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

CITY OF PARMA,                           :

    Plaintiff-Appellee,          :

    v.                                        :

WILLIE S. JACKSON,                     :

    Defendant-Appellant.      :

No. 112646

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** REVERSED AND VACATED
**RELEASED AND JOURNALIZED:** February 15, 2024

---

Criminal Appeal from the Parma Municipal Court
Case No. 22-CRB-01722

---

### *Appearances:*

Scott M. Tuma, Law Director and Chief Prosecutor, City of
Parma, and Brian R. Radigan, Assistant Prosecuting
Attorney, *for appellee*.

Cullen Sweeney, Cuyahoga County Public Defender, and
Rick L. Ferrara, Assistant Public Defender, *for appellant*.


KATHLEEN ANN KEOUGH, A.J.:

{¶ 1} Defendant-appellant, Willie S. Jackson ("Jackson"), appeals a
judgment from the Parma Municipal Court finding him guilty of obstructing official
business. Finding merit to the appeal, we reverse the trial court's judgment.

## I.  Background

{¶ 2}  Plaintiff-appellee, the city of Parma (the "city"), charged Jackson with obstructing official business in violation of Parma Codified Ordinances ("Cod. Ord.") 606.14.  At a bench trial, Parma policer officer Michael Strange ("Officer Strange") testified for the city that at approximately 4:30 a.m. on May 28, 2022, he was dispatched to an apartment in a building on Stumph Road in Parma.  He testified that when he arrived, he observed that the deadbolt on the apartment door was broken and the door had been forcibly kicked in.  He said the female tenant, Martina Thompson, and a male, later identified as Jackson, were in the apartment and told him they were in a back room of the apartment when someone forced their way into the apartment.  They told him that Thompson confronted the intruder and was able to get him to leave while Jackson stayed in the back room.  Officer Strange testified that some items were strewn around the living room and the television was knocked down, which indicated there had been a struggle, although on cross-examination, he admitted that he did not observe any marks of a physical struggle on either Thompson or Jackson.

{¶ 3}  Officer Strange testified that based on his training and experience, he suspected that Jackson was involved in the incident but that Thompson was reluctant to tell that to the police in Jackson's presence.  Officer Strange said that the police asked Jackson his name and date of birth but Jackson refused to identify himself, and when he advised Jackson that he was hampering the police investigation, Jackson stood up, placed his hands in front of him, and told the police

to arrest him. The police arrested him and transported him to jail, where he identified himself. Officer Strange said that he wrote a ticket charging Jackson with violation of Parma Cod.Ord. 606.14, obstructing official business, for refusing to give his name and birthdate to the police.

{¶ 4} Thompson testified for the defense that she and Jackson were in bed in a back bedroom when someone tried to break in. She went to the door while Jackson, who told her to call the police, stayed in the bedroom. She said she did not know who the intruder was but that he eventually left because he heard her calling the police. She testified that she told the police that Jackson was not involved in the incident and, further, that she would have told the police when they arrived at her apartment if he was.

{¶ 5} Jackson testified that he and Thompson were in the back bedroom when they heard someone beating on the door. The person also kept calling Thompson's cell phone; first Thompson ignored the calls but then she answered and told the person to leave. Jackson said that he told Thompson to call the police when the person kept banging on the door. Jackson said that when the intruder managed to get in the apartment, he heard the intruder say, "Oh, you got a n***** in there?" Jackson testified that he stayed in the bedroom because he could hear what was going on and determined the intruder was someone with whom Thompson had a romantic relationship. Jackson said he would have defended Thompson if the intruder hit her, but although the intruder kicked in the door and broke the

television, he did not hit Thompson. Jackson said he heard Thompson tell the intruder to "get the f*** out of my house" and the male left.

{¶ 6} Jackson said that both he and Thompson told the police at the scene that he was not involved in the incident, but the police were suspicious because he stayed in the bedroom during the altercation. Jackson admitted that he did not give his name to the police when they asked for it, instead telling them he did not want to be involved because he had nothing to do with the incident. Jackson said the police then told him, "we're taking you to jail," so he stood up and put both his hands in front of him to be handcuffed.

{¶ 7} The trial court denied Jackson's Crim.R. 29 motions for acquittal made at the close of the city's case and at the close of all the evidence. The court found Jackson guilty of obstructing official business, a second-degree misdemeanor, and imposed a 10-day suspended jail term, six months of probation, and a fine. Jackson now appeals.

## A. Sufficiency of the Evidence

{¶ 8} In the first assignment of error, Jackson contends there was insufficient evidence to support his conviction. The test for sufficiency requires a determination of whether the prosecution met its burden of production at trial. *State v. Thompkins*, 78 Ohio St.3d 380, 390, 678 N.E.2d 541 (1997). The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Id.* at 386.

{¶ 9} Jackson was convicted of obstructing official business in violation of Parma Cod.Ord. 606.14(a), which provides that

> [n]o person, without privilege to do so and with purpose to prevent, obstruct, or delay the performance by a public official of any authorized act within the public official's official capacity, shall do any act that hampers or impedes a public official in the performance of the public official's lawful duties.

{¶ 10} This provision is identical to R.C. 2921.31(A), which has five essential elements: (1) an act by the defendant, (2) done with the purpose to prevent, obstruct, or delay a public official, (3) that actually hampers or impedes a public official, (4) while the official is acting in the performance of a lawful duty, and (5) the defendant so acts without privilege. *Brooklyn v. Kaczor*, 8th Dist. Cuyahoga No. 98816, 2013-Ohio-2901, ¶ 7.

{¶ 11} "To prove the crime of obstructing official business, there must be proof of an affirmative or overt act that hampered or impeded the performance of the lawful duties of a public official." *Kaczor* at ¶ 8, citing *Parma v. Campbell*, 8th Dist. Cuyahoga Nos. 79041 and 79042, 2001 Ohio App. LEXIS 4907, 9 (Nov. 1, 2001). "'One cannot be guilty of obstructing official business by doing nothing because the text of R.C. 2921.31 specifically requires an offender to act.'" *Id.*, quoting *State v. Brickner-Latham*, 3d Dist. Seneca No. 13-05-26, 2006-Ohio-609, ¶ 26. Thus, the "[m]ere failure to obey a law enforcement officer's request does not bring a defendant within the ambit of this offense." *Campbell* at *id.* Similarly, "the mere refusal to answer a police officer's questions regarding one's identity cannot support

a conviction for obstructing official business." *Kaczor* at *id.*, citing *Cleveland Hts. v. Lewis*, 187 Ohio App.3d 786, 2010-Ohio-2208, 933 N.E.2d 1146, ¶ 37 (8th Dist.).

{¶ 12} The city contends that Jackson's refusal to identify himself was not solely a failure to act because by refusing to identify himself and placing his hands in front of him for handcuffing and arrest, the police had to delay their active investigation of the crime scene and take Jackson to jail, thereby impeding the performance of their lawful duties. The city cites *State v. Folley*, 2d Dist. Montgomery No. 24221, 2011-Ohio-4539, as support for its argument.

{¶ 13} In *Folley*, the defendant was arrested for criminal trespass and placed in the back of a police cruiser because she walked towards the entrance of an apartment building after the police ordered her to leave the property. *Id.* at ¶ 3. She then refused to provide any information when the police asked for her name and social security number. *Id.* Her conviction for obstructing official business was affirmed on appeal because the court found that Folley refused to provide personal information to the police *after* she was arrested for criminal trespassing, thereby hampering the officers' ability to perform their official duties regarding the trespass arrest because they had to go to the apartment leasing office to get Folley's personal information. *Id.* at ¶ 11.

{¶ 14} This case is not like *Folley* because Jackson was not under arrest when he refused to give the police his name and date of birth. Indeed, all of the witnesses testified that Jackson was arrested after he refused to provide his personal information. Jackson did not commit an affirmative act prior to his arrest.

{¶ 15} The city's reliance on *Warren v. Lucas*, 11th Dist. Trumbull No. 99-T-0019, 2000 Ohio App. LEXIS 2146 (May 19, 2000), and *State v. Overholt*, 9th Dist. Medina No. 2905-M, 1999 Ohio App. LEXIS 3788 (Aug. 18, 1999), is similarly misplaced. In *Lucas*, the police attempted to interview a witness at a restaurant where she worked regarding a fire set by an arsonist but were interrupted by the defendant each time. *Id*. at 3. The defendant eventually "became so loud and belligerent to the point where [the witness] could not have responded even if she wanted to." *Id*. The officers asked the defendant at least ten times to be quiet and one finally told him that if he said one more word, he would go to jail. *Id*. at 4. At that point, the defendant stuck his finger in one officer's chest and began to yell, and was then arrested. *Id*. The appellate court affirmed the defendant's conviction for obstructing official business, finding that the defendant's "volume and demeanor made it impossible for the officers to question [the witness]." *Id*. at 8.

{¶ 16} In *Overholt*, the police made a traffic stop involving the defendant's son. *Overholt* at 7. The defendant arrived on the scene, exited his vehicle, got into his son's vehicle, and then began yelling at the police, telling them that "this was all a bunch of bulls*** and he was not leaving." *Id*. One officer asked the defendant on several occasions to leave the scene but the defendant refused, telling the officer that if he was not ticketed, the officer would "have to call more cops out here." *Id*. The officer testified at trial that the defendant's actions caused him to characterize the situation as high risk and to fear for his safety and the safety of other officers on the scene. The officer spent 10 to 20 minutes dealing with the defendant even as he was

attempting to ascertain if the defendant's son had driving privileges. *Id*. at 8. On appeal, the court determined there was sufficient evidence to support the defendant's conviction for obstructing official business because his "refusal to leave the scene when requested and his interference with the officers' attempts to complete an arrest, coupled with his repeated, prolonged, and profane outbursts" were "acts" within R.C. 2921.31(A) that would convince a reasonable trier of fact beyond a reasonable doubt that the defendant had purposely hampered or impeded the officers' performance of their duties. *Id*. at 9.

{¶ 17} This case is not like either *Lucas* or *Overholt*. Unlike the defendants in those cases, Jackson performed no affirmative act that would be sufficient to constitute an overt act that hindered the police investigation at Thompson's apartment. He merely calmly refused to provide his name and birthdate to the police.

{¶ 18} "A defendant must engage in some affirmative or overt act or undertaking that hampers or impedes a public official in the performance of the official's lawful duties, as opposed to merely failing or refusing to cooperate or obey a police officer's request for information." *State v. Prestel*, 2d Dist. Montgomery No. 20822, 2005-Ohio-5236, ¶ 16. Thus, in *Campbell*, 8th Dist. Cuyahoga Nos. 79041 and 79042, 2001 Ohio App. LEXIS 4907, this court found that a defendant's failure to answer the door when police arrived or to provide information to police about her daughter's whereabouts, without more, was insufficient to support a conviction of obstructing official business. Likewise, in *Lewis*, 187 Ohio App.3d 786, 2010-Ohio-

2208, 933 N.E.2d 1146, this court found that the defendant's mere refusal to give a police officer his address and information about his daughter, despite the officer's advisement that he needed the address to complete his investigation, was insufficient to support a conviction for obstructing official business. *Id.* at ¶ 39.

{¶ 19} This case is like *Campbell* and *Lewis*. Jackson's refusal to provide his name and birthdate to the police, without more, is insufficient to support a conviction for obstructing official business. When viewed in a light most favorable to the prosecution, the evidence at trial could not convince a reasonable trier of fact beyond a reasonable doubt that Jackson unlawfully hampered or impeded the police officers who responded to Thompson's apartment in the performance of their official duties, in violation of Parma Cod.Ord. 606.14(a). Accordingly, we sustain the first assignment of error.

### B. Manifest Weight of the Evidence

{¶ 20} Jackson's second assignment of error, that his conviction for obstructing official business was against the manifest weight of the evidence, is rendered moot by our determination that there was insufficient evidence to support his conviction. Accordingly, we need not consider it. *See* App.R. 12(A)(1)(c).

{¶ 21} Judgment reversed and conviction vacated.

It is ordered that appellant recover from appellee costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the Parma Municipal Court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
KATHLEEN ANN KEOUGH, ADMINISTRATIVE JUDGE

LISA B. FORBES, J., and
ANITA LASTER MAYS, J., CONCUR