RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

File Name: 10a0353p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

RONALD P. ELLISON, JR.,

        *Plaintiff-Appellee,*

    *v.*

DENISE BALINSKI,

        *Defendant-Appellant,*

ELLA BULLY-CUMMINGS; CITY OF DETROIT,

        *Defendants.*

No. 09-2033

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 07-14795—Patrick J. Duggan, District Judge.

Argued: October 12, 2010

Decided and Filed: November 12, 2010

Before: MERRITT, GIBBONS, and COOK, Circuit Judges.

_____

## COUNSEL

**ARGUED:** Sheri L. Whyte, CITY OF DETROIT LAW DEPARTMENT, Detroit, Michigan, for Appellant. James Clark Cobb, Jr., Detroit, Michigan, for Appellee. **ON BRIEF:** Sheri L. Whyte, CITY OF DETROIT LAW DEPARTMENT, Detroit, Michigan, for Appellant. James Clark Cobb, Jr., Detroit, Michigan, for Appellee.

_____

## OPINION

_____

MERRITT, Circuit Judge. Plaintiff Ronald P. Ellison, Jr. was awarded $100,000 in compensatory damages after a jury trial of his claim under 42 U.S.C. § 1983, alleging a violation of his Fourth Amendment right against unreasonable searches and seizures.

1

The case arises out of a search of Plaintiff's residence and seizure of various property pursuant to a search warrant applied for by Defendant Denise Balinski, an investigator for the Detroit Police Department. Defendant now raises three issues on appeal: (1) whether the district court erred in denying her post-trial motions for judgment as a matter of law, either because the warrant was supported by probable cause or because she is protected by qualified immunity; (2) whether the district court erred in denying her motion for remittitur of the jury's verdict as against the weight of the evidence; and (3) whether the district court abused its discretion in its award of attorney's fees. Rejecting all of Defendant's arguments, we **AFFIRM**.

## I.

This case begins with a rent dispute involving non-parties to this litigation. In February 2006, Zotis and Kimberly Harris began renting a residential property at 13959 Grandville Avenue, in Detroit, Michigan. After the couple initially viewed the home and decided to rent it, Raynard Anderson, a man identifying himself as the property manager, presented them with a lease already signed by owner Asia Thomas, whom the couple briefly met that day. Soon after the Harrises moved in, a dispute over the payment of rent arose. This dispute eventually resulted in two suits filed in landlord/tenant court, where Ms. Thomas sued Mrs. Harris for nonpayment of rent. Both suits were dismissed, the first on procedural grounds and the second after the court found insufficient documentation proving Ms. Thomas's ownership of the property. Four days after the first suit's dismissal, Zotis Harris walked into the Detroit Police Department and stated he wanted to file a fraud report. Mr. Harris related the couple's recent victory in landlord/tenant court and further alleged that, in July 2006, an unknown man knocked on the couple's door and accused the couple of "squatting" on property that, he alleged, was not actually owned by their landlord, Ms. Thomas.

The case was then assigned to Defendant Balinski, an investigator for the Detroit Police Department. Unable to locate Ms. Thomas, Defendant first attempted to identify the owner of the Grandville property by obtaining a deed from the Wayne County Register of Deeds. She discovered a deed reflecting the conveyance of the property from

MyaBrooke Properties, LLC to Ms. Thomas for the price of $90,000, and a previous deed reflecting a conveyance to MyaBrooke Properties by one Kimberly Green, for the price of one dollar. Defendant determined that MyaBrooke Properties was owned by Plaintiff Ellison, and also discovered a similar transaction involving another property, 19473 St. Louis Avenue, which MyaBrooke Properties sold to Ms. Thomas for $90,000 after originally purchasing it, again, for one dollar.

These transactions—specifically, the fact that two properties were bought by MyaBrooke for one dollar and sold to Ms. Thomas for $90,000—aroused the suspicion of Defendant, who, based apparently on previous experience with fraudulent deeds, "thought something was wrong" and suspected "fraud."[1] In an effort to find the closing documents related to the sale of that property by MyaBrooke to Ms. Thomas, Defendant contacted Plaintiff and asked him whether he owned the Grandville property; he responded that he had sold it. Defendant then requested that he bring her documents proving this transaction, and refused to answer when Plaintiff inquired about the reason for the investigation. Plaintiff subsequently ignored further phone messages from Defendant repeating her request for the documents, and never provided them to Defendant.

Armed with this information—the allegedly suspicious transactions, the Harrises' two victories in landlord/tenant court, and Plaintiff's refusal to provide her with requested documents—Defendant applied for a warrant to search Plaintiff's residence, which records at the Michigan Department of Labor and Economic Growth identified as the location of MyaBrooke Properties. The affidavit in support of the warrant indicated that Defendant was investigating "a fraud complaint," and related the history of the Thomas/Harris landlord/tenant litigation and Mr. Harris's report about the man accusing them of "squatting." Then, turning to Plaintiff's role in the investigation, Defendant provided:

---

[1] At trial, Plaintiff explained the minimal prices paid for the two properties by testifying that, as part of both transactions, he paid off associated debts (a mortgage on the Grandville property and a tax lien on the St. Louis property).

> Writer in the meantime was still investigating this case in
> attempt to find out who the owner of the property was. Writer
> contacted Mr. Ronald Ellison (President and owner of
> Myabrooke Properties) who sold the property (according to
> the Wayne County Register of Deeds) to Ms. Asia Thomas on
> 02/02/05 for the amount of $90,000.00. (The property had
> previously been Quit Claimed from Kimberly Ivory (Green)
> to Myabrooke Properties for the sum of $1.00, according to
> the Wayne County Register of Deeds). Writer has contacted
> Mr. Ellison many times by phone in an attempt to get
> paperwork on this property. Mr. Ellison has refused to
> cooperate in this investigation. His company sold the
> property yet he refuses to show this writer any paperwork in
> regards to this purchase and sale.

Defendant then related the similar transaction involving the St. Louis property and stated that she was "unable to obtain any information regarding loans or title companies from either property." As the areas to be searched, the warrant specified Plaintiff's entire residence, including any vehicles. As the items to be seized, the warrant specified:

> Any and all computers, computer accessories, any software,
> any and all paperwork pertaining to Myabrooke Properties,
> LLC, and or Ronald Ellison . . . [or] 13959 Grandville, any and
> all documents relating to the property at 19473 St. Louis,
> any and all documents regarding Asia Thomas, Raynard
> Anderson, or indicia of any crime.

The warrant was reviewed and signed by both a Wayne County Prosecutor and a 36th District Court Judge. Defendant and unknown police officers then executed the warrant at Plaintiff's residence. Plaintiff arrived when the search was in progress, was advised he was not allowed to enter, and waited outside for at least forty-five minutes, where he anxiously observed several curious neighbors and drivers of passing cars watching the events. At some point, Plaintiff's wife and young daughter drove by the residence, but, seeing Plaintiff there with the police, drove away. The combination of the wide authority granted in the warrant and the apparent disorganization of Plaintiff's home office gave the searching officers some difficulty in determining which of Plaintiff's documents to seize. During the search, Defendant herself seized a large

plastic bin found in Plaintiff's bedroom closet containing clothing and shoes, emptied it of its contents, and began filling it with documents; as she testified at trial, "there was so much stuff we just started gathering things up." Officers also seized Plaintiff's desktop computer, and, after Plaintiff's arrival on the scene, a laptop computer discovered after a search of his car.

Plaintiff then commenced this action. By the time the case went to trial, Plaintiff's case was narrowed to two claims against Defendant Balinski, in her individual capacity: a § 1983 claim for the violation of Plaintiff's Fourth Amendment rights against unreasonable searches and seizures, and a state law claim for libel and slander. The jury returned a verdict for Plaintiff on the Fourth Amendment claim, awarding him $100,000 in compensatory damages but declining to award any punitive damages, and a verdict for Defendant on the state law claim.

Defendant then moved for judgment as a matter of law, or, in the alternative, for a new trial or remittitur of the jury's damage award, pursuant to Federal Rules of Civil Procedure 50(b) and 59. The district court denied these motions. Plaintiff moved for attorney's fees pursuant to 42 U.S.C. § 1988, and the district court, granting in part and denying in part that motion, awarded $102,480.00 in attorney's fees to Plaintiff. Defendant now appeals.

**II.**

**A. Whether the District Court Erred in Denying Defendant Balinski's Motion for Judgment as a Matter of Law, Either Because the Search Warrant Was Supported by Probable Cause, or Because Defendant Balinski is Entitled to Qualified Immunity**

On appeal, Defendant maintains that the warrant was supported by probable cause. The Fourth Amendment provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend IV. In determining whether probable cause exists to support a search warrant, the magistrate asks whether "given all the circumstances set forth in the affidavit . . . there is a fair

probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). The affidavit must establish a nexus between the place to be searched and things to be seized, such that there is a substantial basis to believe that the things to be seized will be found in the place searched. *United States v. Carpenter,* 360 F.3d 591, 594–95 (6th Cir. 2004) (en banc). Review of the sufficiency of evidence supporting the probable cause determination is limited to the information contained in the four corners of the affidavit. *United States v. Berry*, 565 F.3d 332, 338 (6th Cir. 2009).

As an initial matter, it is unclear from the face of the affidavit prepared by Defendant exactly what crime was being investigated, much less what crime she had probable cause to suspect had occurred. The sole clue in the affidavit is Defendant's reference to her investigation of the "fraud complaint" made by the Harrises. As the district court recognized in denying Defendant's motion for judgment as a matter of law, most of the information contained in the affidavit concerns an investigation of whether Asia Thomas owned the property rented to the Harrises. But on appeal, Defendant appears to argue, as she did in her deposition and in her testimony at trial, that the subject of the investigation was mortgage fraud, and Defendant had probable cause to believe evidence of that crime would be found at Plaintiff's residence. However, Defendant in her affidavit made no mention of mortgages whatsoever, and specifically mentioned that she had been "unable to obtain any information regarding loans or title companies for either property." Without any information about mortgages on the properties, it is difficult to imagine how Defendant believed she had probable cause to suspect mortgage fraud had occurred.

Seemingly retreating from the mortgage fraud rationale at another point in her brief on appeal, Defendant also argues that "[t]he reality is that there are any number of variations of fraud" and "Investigator Balinski could not know what type of fraud she may have been dealing with unless she had evidence." Defendant appears to be making the startling suggestion that the mere suspicion that *some* vaguely specified crime has occurred makes constitutional a search of an unsuspecting citizen's entire *home*. It is

difficult, to say the least, to square this contention with the history of the Fourth Amendment, which was enacted in part to curb the abuses of general warrants, devices which provided British officers with broad discretion to search the homes of citizens of the Colonies for evidence of vaguely specified crimes. *See Steagald v. United States*, 451 U.S. 204, 220 (1981) (discussing the history of the Fourth Amendment); *Boyd v. United States*, 116 U.S. 616, 625–30 (1886) (same).

In any case, even assuming the existence of probable cause as to the occurrence of a crime, the affidavit failed entirely to establish a nexus between the material to be seized and the place to be searched. The affidavit did not state how Defendant came to know that MyaBrooke Properties was located at the residence, or, more critically, why documentation of an allegedly fraudulent mortgage might with a fair probability be found there. Given these rather stark defects in the affidavit, a reasonable jury could conclude that Defendant lacked probable cause when she applied for the warrant to search Plaintiff's residence.

Defendant urges that, even if a Fourth Amendment violation did occur, the district court erred in its determination that qualified immunity did not apply. Qualified immunity protects government officials from civil liability in the course of performing discretionary functions unless they violate clearly established constitutional rights. *Morrison v. Board of Trustees*, 583 F.3d 394, 400 (6th Cir. 2009). An official enjoys qualified immunity as a matter of law unless the facts alleged would permit a reasonable juror to find that (1) the defendant violated a constitutional right, and (2) the right was clearly established. *Id.* As discussed above, sufficient evidence was introduced to permit a reasonable juror to find that Defendant violated Plaintiff's Fourth Amendment rights in applying for and executing a warrant based on an affidavit failing to establish probable cause. As to whether the right was clearly established, the Supreme Court has framed this inquiry as whether "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier v. Katz*, 533 U.S. 194, 202 (2001). While police generally are entitled to rely on a judicially secured warrant for immunity from liability for unconstitutional searches, qualified immunity is not appropriate "where

the warrant application is so lacking in indicia of probable cause as to render official belief in its existence unreasonable." *Malley v. Briggs*, 475 U.S. 335, 344–45 (1986); *see also Mills v. City of Barbourville*, 389 F.3d 568, 577 (6th Cir. 2004). Here, a jury could reasonably determine that this affidavit—mentioning no specific crimes thought probably committed, making no link between Plaintiff's residence and any crime, yet seeking broad authority for a search of Plaintiff's entire residence for any document "pertaining to" Plaintiff—was so lacking in indicia of probable cause to render Defendant's belief in its existence objectively unreasonable. Accordingly, the district court was correct to deny Defendant's motion for judgment as a matter of law.

## B. Whether the District Court Erred in Denying Defendant Balinski's Motion for Remittitur of the Jury's Verdict as Unsupported by the Weight of the Evidence

Defendant argues on appeal, as she did in the lower court, that the jury's compensatory damages award of $100,000 is unsupported by the weight of the evidence, excessive, and based on prejudice or bias. Defendant contends that the sole damages adequately proved by Plaintiff are $500 for his seized laptop, proven by a computer repair bill. Despite Defendant's apparent suggestion to the contrary, the law is clear that compensatory damages under § 1983 may include noneconomic injuries such as embarrassment, humiliation, or loss of reputation. *See*, *e.g.*, *Memphis Cmty. Sch. Dist. v. Stachura*, 477 U.S. 299, 307 (1986); *Shamaeizadeh v. Cunigan*, 338 F.3d 535, 546 (6th Cir. 2003); *Chatman v. Slagle*, 107 F.3d 380, 384–85 (6th Cir. 1997). This relatively broad damages rule is particularly appropriate where, as here, the harms suffered by a § 1983 plaintiff consist not only in objectively observable physical or economic injuries but also in an intangible injury to his constitutional and dignitary interest in being free from searches of his personal residence unsupported by probable cause. *See Stachura*, 477 U.S. at 316 (Marshall, J., concurring) (stating that "deprivations of constitiutional rights can . . . themselves constitute constitutional injuries); *Brandon v. Allen*, 719 F.2d 151, 154–55 (6th Cir. 1983), *rev'd on other grounds sub nom. Brandon v. Holt*, 469 U.S. 464 (1984) (noting that the common law, held by the Supreme Court to be the appropriate starting point in § 1983 damages analysis, "for centuries has permitted recovery for invasions of a wide array of intangible

'dignitary interests'").    At trial, Plaintiff offered uncontradicted testimony that Defendant's actions—resulting in his standing in his driveway in broad daylight as police conducted a search of his home while neighbors and family watched on—caused him to suffer mental anguish and harm to his reputation.  The district court did not err in denying Defendant's motion.

**C. Whether the District Court Abused Its Discretion in its Award of Attorney's Fees to Plaintiff**

Finally, Defendant contests the amount of the district court's award of attorney's fees to Plaintiff, pursuant to the fee-shifting provisions of 42 U.S.C. § 1988. Defendant's principal objections, both of which were rejected by the district court, are (1) that two specific billing entries were improperly included in the fee calculation, and (2) that the district court failed to award Plaintiff only a percentage of his total lodestar amount.

In support of her first objection, Defendant cites two allegedly improper entries primarily concerning Plaintiff's attorney's attendance at landlord/tenant proceedings regarding the rent disputes between Ms. Thomas and Mrs. Harris.  The district court accepted Plaintiff's explanation that his attorney's attendance at these hearings was related to his pursuit of the ultimately successful Fourth Amendment claim, as Plaintiff's attorney was present at these hearings to observe the behavior of Defendant Balinski and Mrs. Harris, both key figures in this case, in an anticipatory effort to rebut Defendant's use of the results of these proceedings at trial.  The district court did not abuse its discretion in rejecting Defendant's objection and accepting Plaintiff's explanation.

In support of her second objection, Defendant argues that the district court erred in not awarding Defendant only a fraction of the lodestar amount.  Reasonable attorney's fee awards are determined by the fee applicant's "lodestar," calculated by multiplying the proven number of hours worked by a court-ascertained reasonable hourly rate. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).  Here, the district court determined the lodestar amount to be $102,480 (512.40 hours at an hourly rate of $200).  Defendant argues that Plaintiff is entitled only to 33% of this amount.  It is unclear precisely how

Defendant calculated this particular percentage, but Defendant's argument for reducing the lodestar amount appears to be based on two facts in the record: (1) that Plaintiff originally sued defendants other than Defendant Balinski, and (2) that the case originally included more claims than those that were eventually successful. As to the first fact, the district court found that Plaintiff's attorney already properly excluded time spent on a distinct failure-to-train claim against Defendant Ella Bully-Cummings. As to the second, the district court found that "the focus of Plaintiff's litigation efforts has been his Fourth Amendment unlawful search claim against Balinski," and based this determination on the fact that two out of the three summary judgment motions filed in this case concerned that claim, while the third concerned the failure-to-train claim, and that time had already been properly excluded. Further, the district court of its own initiative excluded time spent on claims it found insufficiently related to the one successful at trial. Accordingly, the district court did not abuse its discretion in making its fee award.

## III.

For the above reasons, the decisions of the district court are **AFFIRMED**.